## LEWIS A. E. BLAKE *vs.* RHODE ISLAND COMPANY.

### JANUARY 27, 1911.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1)  *New Trial. Newly Discovered Evidence. Perjury.*

In an action of negligence, defendant petitioned for a new trial on the ground of newly discovered evidence, and in support of the motion filed affidavits covering alleged conversations with a witness, in which conversations witness admitted that he committed perjury at the trial:—

*Held,* that the evidence would not be admitted to impeach the verdict.

(2)  *Negligence. Duty of Driver Approaching Track.*

Request to charge in these words, "It was the plaintiff's duty to look in both directions as he approached (the street), and to select such a point from which to look, as to enable him to determine whether or not a car was coming, and if the jury find that he did not so look, and that his failure so to do contributed to the collision, then he is guilty of contributory negligence, and he cannot recover."

*Held,* to state the law correctly, but the charge by the court, as to the duty of plaintiff, "to look and see if a car is approaching, and if there is a curve and the view is obstructed, to listen and see if a car is approaching," was sufficiently full and complete.

(3)  *Charge to jury.*

When the court has correctly instructed the jury as to the law it is not required to repeat such instructions in the exact language requested by counsel.

(4)  *Negligence. Common Carrier. Request to Charge.*

Request to charge, "If the jury should find that the running-board of the car was down, that fact would have no bearing upon the plaintiff's contributory negligence, if the jury also find that the car must have been in sight when he says he looked; because in such case he would have seen that the running-board was down, and would be obliged to manage his team, having such fact in mind."

*Held,* properly refused; because including an assumption of fact which it would have been improper to charge.

(5)  *Negligence. Carriage Approaching Track.*

Charge of the court, "A person may see a car approaching, and it may be at such a distance, even although approaching at a high rate of speed, he may cross the track, and he is not guilty of negligence in doing so because a reasonable prudent man would infer that the car could not reach him at the speed at which he was driving his own conveyance before he got across, and under those circumstances he would not be guilty of negligence in entering upon the track."

*Held*, a correct statement of the law.

In an action for negligence arising out of a collision there was no direct testimony that the electric car could have been stopped after it was apparent to the motorman that plaintiff intended either to get on the track or so near thereto as to make a collision probable, although there was conflicting testimony as to the distance of the car from the place of the accident when the cart made the turn into the avenue, and as to its speed, and also as to what the motorman did in regard to stopping the car. The motorman also testified that he saw the cart when it had not got quite to the corner, and saw it turn the corner:—

*Held*, that the absence of any such direct testimony was not sufficient to justify the granting of a request to charge that there being no such evidence, plaintiff could not recover upon the ground that, notwithstanding his own negligence, the collision could have been avoided by the motorman; as such a statement would have been merely an inference of the witness from what he saw, which inference should properly and might in the case at bar have been properly inferred by the jury from the evidence.

(7)  *Negligence.  Damages.*

In an action for negligence, evidence showed that plaintiff received a severe and almost fatal injury to his intestines and stomach, necessitating an important operation, and requiring the wearing of a heavy belt to support the abdominal wall, leaving him in a condition where he would be unable in the future to do any heavy work. He also suffered a money loss of $2,100:—

*Held*, that a verdict for $9,082 was not excessive.

TRESPASS ON THE CASE for negligence. Heard on exceptions of both parties. Plaintiff's exception sustained. Defendant's exceptions overruled.

JOHNSON, J. This is an action of the case, brought by Lewis A. E. Blake against the Rhode Island Company, to recover damages for personal injuries alleged to have been sustained through the negligence of the defendant company in the operation of one of its street cars.

On the 29th day of June, 1906, the plaintiff was driving an ice cart, and had just turned with said cart from Patt street into East avenue, in the city of Pawtucket, when a car of the defendant company, travelling from Providence toward Pawtucket, overtook and collided with said ice cart; and as a result of said collision the ice cart was overturned and the plaintiff was thrown to the ground and injured.

The case was tried before a justice of the Superior Court and a jury, on the 18th, 19th, 20th, and 21st days of October, 1909, and resulted in a verdict for the plaintiff for $9,082.50. Thereafter the defendant duly filed a motion for a new trial upon the grounds:

"1.   That said verdict is contrary to the evidence and the weight thereof.

"2.   That said verdict is contrary to the law.

"3.   That the amount of damages awarded by said verdict is excessive.

"4.   That said defendant has discovered new and material evidence in said case which it had not discovered at the time of the trial thereof, and which it could not with reasonable diligence have discovered at any time previous to the trial of said case, as by affidavits to be filed in court will be fully set forth, said affidavits being made a part of this motion."

This motion was heard July 2, 1910, by the justice who presided at the trial, and July 8, 1910, a rescript was filed denying said motion on all grounds except that of excessive damages.   With respect to this ground the motion was granted, unless the plaintiff should within ten days remit all of the verdict in excess of $7,000.

The plaintiff did not file a remittitur.

Within the time, and in accordance with the procedure required by the statute, both parties presented their separate bills of exceptions and transcripts of the testimony, which were severally duly allowed by the justice presiding.

The case is now before this court on said two bills of exceptions.

The exceptions pressed by the defendant are the following, as numbered in its bill of exceptions:

"16.   To the refusal of said justice, at said trial, to charge defendant's first request to charge, as appears on page 448 of said transcript, exception thereto appearing on page 449 thereof.

"17.   To the refusal of said justice, at said trial, to charge defendant's fourth request, as appears on page 449 of said transcript.

"18. To the refusal of said justice, at said trial, to charge defendant's fifth request, as appears on page 449 of said transcript.

"19. To the refusal of said justice, at said trial, to charge defendant's sixth request, as appears on page 450 of said transcript.

"20. To the refusal of said justice, at said trial, to charge defendant's seventh request, as appears on page 450 of said transcript.

"21. To the refusal of said justice, at said trial, to charge defendant's eighth request, as appears on page 450 of said transcript, exceptions thereto appearing on page 451 thereof.

"22. To the decision of said court denying the defendant's motion for new trial on the ground that said verdict is contrary to the evidence and the weight thereof.

"23. To the decision of said court denying the defendant's motion for new trial on the ground that said verdict is contrary to the law.

"24. To the decision of said court denying the defendant's motion for new trial on the ground that the amount of damages awarded by said verdict is excessive.

"25. To the decision of said court denying the defendant's motion for a new trial on the ground of newly discovered evidence."

We will first consider the exceptions to the decision of the Superior Court denying the motion for a new trial on the grounds: that the verdict was contrary to the evidence, and contrary to the law, being exceptions numbered twenty-two and twenty-three. From an examination of the evidence we are satisfied that the justice presiding at the trial was correct in deciding that "the evidence was sufficiently conflicting on the three points, of defendant's negligence in operating the car at an excessive rate of speed, on the contributory negligence of the plaintiff, and as to the motorman's opportunity to stop the car after he saw or should have seen the ice cart, as to make them matters for the determination of the jury."

(1)    The twenty-fifth exception is to the decision of the court denying the defendant's motion for a new trial on the ground of newly discovered evidence. In support of the motion on this ground several affidavits were filed covering three conversations alleged to have been had with the motorman Cook on March 21, March 29, and April 1, 1910. The affiants state that in said conversations said Cook admitted that he testified falsely at the trial of the case and declared that he had lied and perjured himself on the witness stand. The case seems to come clearly within the law as laid down by this court in *Dexter* v. *Handy*, 13 R. I. 474. In that case the court, Durfee, C. J. (pp. 475-6), said: "The ground of the petition is that these witnesses, after the trial was over, severally admitted that their testimony was untrue. The affidavits of persons who profess to have heard these admissions are filed in support of the petition, but no affidavits are produced from the witnesses themselves either admitting that their testimony was false or stating anything differently from their testimony, while, on the contrary, one of the witnesses, and he the most important, has given an affidavit denying that he ever made the admissions. If another trial were granted, the new evidence would not be admissible in proof of the issue made by the defendant, but only to contradict or discredit the witnesses if they were again put on the stand by the plaintiff. A new trial is seldom granted for the introduction of newly discovered testimony, which goes merely to impeach the witnesses of the prevailing party. We confess that the petition does not commend itself to our minds. If the affidavits introduced by the petitioner are true, the witnesses have confessed themselves perjurers; and yet the petitioner, while he asks us to grant him a new trial on that account, has not, so far as appears, taken any steps to have them prosecuted. It has been decided that a new trial on account of perjury will not be granted until after the perjured witness either has been convicted or is dead, mere evidence of the perjury, or even an indictment for it, being deemed insufficient. *Dyche* v. *Patton*, 3 Jones Eq. 332; *Benfield* v. *Petrie*, 3 Doug. 24; *Seeley* v. *Mayhew*, 4 Bing. 561;

*Wheatly* v. *Edwards*, Lofft. 87.   Perhaps the rule laid down in these cases may be too strict and exacting for all circumstances, but it is obviously founded in wise policy.   Certainly the talk of a witness after trial ought not generally to weigh against the sworn testimony; for there would be no security for verdicts if, without peril to the witnesses, they were liable to be upset by such talk.   The best evidence of perjury is the conviction of the perjurer.   It is against the petition that the petitioner can find no precedent for it.   There is, however, precedent against it.   In *Commonwealth* v. *Randall*, Thacher Cr. Cas. 500, it was held that expressions used by a witness after a trial, contradicting or denying what he said in court, are not ground for setting aside the verdict and for granting a new trial, but are evidence to convict him of perjury.   'In almost every instance,' said the court, 'it would be easy for a losing party to obtain affidavits of that description.'   We must, therefore, refuse a new trial on this ground."   The doctrine of this case has been followed in *Roberts* v. *Roberts*, 19 R. I. 349; *Jones* v. *N. Y., N. H. & H. R. R. Co.*, 20 R. I. 214; *Timony* v. *Casey*, 20 R. I. 257; and *State* v. *Lynch*, 28 R. I. 463.   In the last mentioned case, the court, Douglas, C. J. (p. 465), said: "On examination of the affidavits submitted we find that they do not divulge any evidence upon the merits of the case, but are confined to attempts to discredit the principal witness of the crime.   They consist mostly of statements which this witness is said to have made contradictory of her story upon the stand.   Such evidence, if well fortified, is not generally admitted to impeach a verdict, as we have frequently decided " (citing the cases *supra*).

(2)   The sixteenth exception is to the refusal of the court to charge the defendant's first request, as follows: "It was the plaintiff's duty to look in both directions as he approached East avenue and to select such a point from which to look as to enable him to determine whether or not a car was coming, and if the jury find that he did not so look and that his failure so to do contributed to the collision, then he is guilty of contributory negligence, and he cannot recover."   This request appears to state the law correctly.   The court had, however, covered the

matter in the general charge. Thus, on page 435 of the transcript, the court said: "So it is the law that a person in the street, in a conveyance or walking, in approaching a track is required to look and listen; to look and see if a car is approaching and if there is a curve and the view is obstructed, to listen and see if a car is approaching, and if a person fails to do it, that is negligence in law, because he hasn't done it." And further, on page 436, "Now if a person is bound to look and listen, of course, he must avail himself of what his looking and listening inform him, and he can't, after looking and seeing a car approaching, say I have looked and listened and enter on the track with a certainty he can't get across before the car which is approaching reaches that point. That is, he must avail himself of what he sees, and he is also charged with knowledge of what he might see." We think the instruction as to the duty "to look and see if a car is approaching, and if there is a curve, and the view is obstructed, to listen and see if a car is approaching," covers the ground quite as fully and completely, from a legal standpoint, as would an instruction that, "it was the plaintiff's duty to look in both directions, as he approached East avenue, and to select such a point from which to look as to enable him to determine whether or not a car was (3) coming." When the court has correctly instructed the jury as to the law, he is not required to repeat such instructions in the exact language requested by counsel.

The seventeenth exception is to the refusal of defendant's fourth request to charge the jury as follows: "If the jury should find that the running-board of the car was down, that fact would have no bearing upon the plaintiff's contributory (4) negligence if the jury also find that the car must have been in sight of the plaintiff when he says he looked, because in such case he would have seen that the running-board was down and would be obliged to manage his team having such fact in mind." The matter of this request had been fully covered by the charge of the court, except the assumption in the request that if the running-board was down and the plaintiff looked at the car he must have seen that the running-board was down. This

was an assumption of fact which it would not have been proper for the court to charge.

(5)    The eighteenth exception was to the refusal of defendant's fifth request to charge the jury, as follows: "If the jury find that the car was in sight of the plaintiff and approaching at a high rate of speed before the plaintiff's team had reached the track, it was the duty of the plaintiff to have stopped his horse and if the collision was brought about by his failure so to do, there can be no recovery." This request is faulty in failing to specify any distance between the plaintiff and the car as he approached the track, the only limitation as to distance being that the car was in sight. The court had covered the matters involved in the request correctly in the charge, page 436, as follows: "Now, a person may see a car approaching, and it may be at such a distance, even although approaching at a high rate of speed, he may cross the track, and he is not guilty of negligence in doing so because a reasonable, prudent man would infer that the car couldn't reach him at the speed at which he was driving his own conveyance before he got across, and under those circumstances he would not be guilty of negligence in entering upon the track."

The nineteenth exception was to the refusal of defendant's sixth request to charge, as follows: "If the jury find that the plaintiff rounded the corner of East avenue and Patt street with the car running at high speed, and but a short distance south of Patt street, in view of the small distance between the curbing on East avenue and the nearest rail, the plaintiff was not in the exercise of due care if the jury also find that in so turning a collision was rendered probable." The court had instructed the jury fully as to the duty of the plaintiff in approaching the track to look and listen; as to the question of the speed of the car, and its distance south from Patt street when the plaintiff drove out of said street and the conflicting testimony as to both these matters; as to the distance between the track and the nearest rail on East avenue; and as to the care required of the plaintiff in making the turn from Patt street into East avenue in view of the testimony as to all these

matters. The general instructions upon these matters were sufficiently full and complete, and the court was not bound to repeat such instructions in the form of this request.

The twentieth exception was to the refusal of the defendant's seventh request to charge, as follows: "If the jury find that the motorman was negligent, even grossly so, in the handling of his car, such a finding will not enable the plaintiff to recover if the jury also find that the conduct of the plaintiff was a contributing cause of the collision or that the plaintiff could have avoided the collision had he conducted himself as a reasonably prudent person would have done under the circumstances the jury find to have existed just prior to the time of the collision." This request is entirely covered by the charge. Everything contained in it had been charged.

(6)    The twenty-first exception was to the refusal of the defendant's eighth request to charge, as follows: "As there is no evidence that the car could have been stopped after it was apparent to the motorman that the plaintiff intended either to get on the track or so near thereto as to make a collision probable, the plaintiff cannot recover upon the ground that notwithstanding his own negligence the collision could have been avoided by the motorman." It is true that no witness testified directly that the car could have been stopped after it was apparent to the motorman that the plaintiff intended either to get on the track or so near thereto as to make a collision probable. The motorman testified, as follows (p. 119): "Q. Did you see the wagon before you got to Patt Street? A. Yes, sir. Q. What was the wagon doing when you saw it? A. Coming down Patt street, near the corner. Q. Had it got to the corner when you saw it? A. Not quite. Q. Did you see it turn the corner? A. Yes, sir. Q. And when the wagon turned the corner, which direction did it take? A. Went north. Q. In what part of the street? A. The left-hand side of East avenue. Q. When the cart turned the corner and started north on the left-hand side of East avenue, how far away was your car? A. About fifty feet. Q. What speed were you going? A. About eighteen miles an hour. Q. Was

the power on or off?    A. It was on.    Q. When did you put the power off?    A. I thought I would clear the ice wagon. Q. When did you shut the power off?    A. When I hit the wagon.    Q. What made you think you would clear it?    A. He just got around the corner, just got straightened out.    Q. Why didn't you clear it?    A. The running-board was down. Q. On which side?    A. The left hand-side." He did not testify to the distance his car was from Patt street when he first saw the wagon.    He did testify, however, that he saw the wagon coming down Patt street, near the corner; that it had not quite got to the corner, and that he saw it turn the corner and go north on the left-hand side of East avenue.    There was other testimony as to the distance from Patt street of the car when the ice cart made the turn into East avenue; as to the speed of the car when approaching Patt street; and also as to what the motorman did in regard to stopping the car.    The testimony as to all these matters was conflicting.    In our opinion the absence from the testimony of a direct statement by a witness that the motorman could have stopped the car in time to avert the collision was not sufficient to justify the granting of the request in the form in which it was presented. Such a statement would have been merely an expression of the opinion of the witness from what he saw.    It is the province of the jury to draw inferences from the testimony, rather than of witnesses to draw them from what they see.    We think that the jury could properly infer from the testimony that the car could have been stopped in time to avert a collision after it was apparent to the motorman that the plaintiff intended either to get on the track or so near thereto as to make a collision probable.

(7)    The defendant's twenty-fourth exception is to the decision of the trial court denying the defendant's motion for a new trial on the ground that the amount of damages awarded by the verdict is excessive.    The testimony shows that the plaintiff received a severe, and almost fatal, injury.    He had his ice-tongs over his shoulder when thrown to the ground, and one point of the ice-tongs penetrated his abdomen, necessitating

an operation the evening of the day the injury was received. At the operation it was found that one of the intestines had been pierced, the outer coating of the stomach injured, and a vein completely severed, and that there was a large amount of blood in the abdominal cavity. Two incisions were made in the abdomen by the surgeons, one about five and one-half inches in length and the other, at right angles to the first, about four inches in length,—the second incision being necessary in order to reach the place of hemorrhage and to enable the surgeons to scoop out the blood. At the junction of these two incisions there is, according to the medical testimony, an area, an inch to an inch and a quarter across, where the abdominal wall is thinned and is weakened. The operating surgeon testified that the rectus muscle was cut in the operation, and that such cutting weakened that muscle very much, and that although it was sewed together and healed pretty fairly well, still the muscle never would be as good as it was before. The plaintiff has to wear a heavy belt five or six inches wide to support the abdominal wall.

The testimony shows a money loss up to the time of the trial of about $2,100, made up of: Fees for operation and etherization, $1,100; loss of wages from accident to time of trial, $1,000. The plaintiff has not been able to do heavy work, and was not able to do such work at the time of the trial. The medical witnesses testified that he would not be able in the future to do heavy work. According to the medical testimony this injury is permanent. The medical expert called by the defence testified that "It could not be advised that he should do heavy lifting," and in answer to the question, "Would it ever be?" answered, "Not after the reception of this injury." Also, according to the medical testimony, his incapacity to do heavy work will continue, and he will need medical attention in the future. The verdict for $9,082.50, does not appear to us, upon the evidence, to be excessive.

The defendant's several exceptions are overruled.

The plaintiff's sole exception is to the decision of the justice presiding that the damages awarded by the jury were excessive

and that unless within ten days after the filing of said decision the plaintiff should in writing remit all of said verdict in excess of $7,000, the defendant's motion for a new trial would be granted.

The plaintiff's exception is sustained.

The case is remitted to the Superior Court with direction to enter judgment upon the verdict.

*John W. Hogan,* for plaintiff.

*Joseph C. Sweeney, Alonzo R. Williams,* for defendant.

